Good morning, Your Honor. May it please the Court, Kendra Hutchinson of Federal Defenders, for the appellant in this matter, Deshawn Turner. This Court should reverse and dismiss the adjudications of guilt on specifications 4, 6, and 8. The government failed to show good cause for not calling the witness. Her out-of-court statements were unreliable, and Mr. Turner's interest in confronting her was very weighty. Now, I understand that mootness is floating around in this case, and I was inclined to start with that because it's a condition proceeding, but you know, if the Court wants to... Now? Yeah, I'd like you to start with that. Please. Certainly, yeah. You know, as you know from our, you know, late-filed 28J letter, we'd urge the Court not to essentially accept this as a motion to dismiss for the reasons set forth in that letter. There are procedural safeguards that are applicable to, you know, actual motion practice that involves affidavits. We asked you to brief it. We issued an order, right, so we can do that I understand what you're saying. Yeah. And you did, you know, you briefed now the issue, so I don't know what would be gained by rejecting it on procedural grounds, right? Sure. Yeah, absolutely, Your Honor. So why, as you know, your letter identifies what the law is, that typically, unless there's some continuing concrete injury, the collateral You're saying that because there's, in New York, they can consider the length? That's the distinguishing feature? Yeah, I mean, I think Your Honor is making my argument for me. I mean, I and my adversary were agreeing on the law. You know, Spencer sets the law, and this Court has applied it in numerous cases, Probert being the most important one. There must be a concrete and continuing injury that continues to flow. Now, you know, I've done a survey of, you know, I've thought about this as Mr. Turner's sentence was approaching, quite frankly, Your Honor. I was aware this was happening. You know, I did quite a survey across the country, and I couldn't find a case that was right on point for this, in which a defendant argues that the particular consequences, statutory consequences, flow from the fact of a revocation. Now, you're right, Your Honor, that courts, including the Supreme Court and this Court, have rejected things like reputational damage, which can sort of be considered a collateral consequence. Impeachment value, you know, sort of future possible criminal consequences. But I was not able to find a case in which a defendant argued what we have here, which is New York's specific statutory scheme allows Well, in Lane v. Williams, the Supreme Court said employment prospects is not enough in general. I'm sorry. Employment prospects is insufficient to demonstrate continuing collateral consequences. That was Spencer, I think, also stands for that proposition. But you're arguing there's something unique about New York, because they have to consider the seriousness of the offense, and in doing so, they might consider the length. That's exactly right, Your Honor. But even here, even if that were true, here, we're talking about 71 months versus 64 months. So is there really a non-speculative argument that if we were to agree with you on this appeal and those particular specifications are vacated, the other ones remain, that you're not challenging? So his total sentence together would be 64 months versus 71 months, that that's going to make a difference to an employer? Your Honor, we do assert that here. Well, what's the basis for asserting that? I mean, if we go with that, then supervisor's advisers will never be moved, because someone could stand at that podium and always say, look, if I win this appeal, there'll be less months total, and some employer might think that's important. Your Honor, I would say that in the specific statutory context of New York where this is a mandatory consideration, number one. which would be speculative as to whether he's going to get a lesser sentence. We're talking about in the very particular circumstances of this case where we are asking for dismissal of the incorrectly adjudicated specifications. I think that's a pretty rare case, quite frankly. I don't think this is going to swallow up the mootness exception. It's a novel issue, and I'd ask the courts to seriously consider it here. I understand why, because you're asking for dismissal here as opposed to a redo? Yes, because— Under this theory. No, Your Honor. If you're arguing that something went wrong, you should have the additional, whether it be four months, six months, eight months, whatever the sentence on the violation was, that maybe if you subtract those out, an employer might think differently. Right? No, Your Honor. We're arguing that in this particular case because dismissal would result in this court striking that sentence, that 19 months. And we're not necessarily conceding that the 12 months that he would have gotten on the other ones would sort of, you know, like factors into this. You know, we haven't briefed anything like, for example, a concurrent sentence doctrine in this case, Your Honor. But, you know, in this specific instance where, you know, the result from this court would be to strike the sentence and my client would be able to walk into an employment situation, as he did before, as we noted in our letter, and have to state what his sentence is and not see an employer— In other words, if you were seeking a remand, if the defendant has already served the time, this court's never going to go forward on a revocation hearing, on a remand, on a specification that's going to be dismissed. It's going to be stricken in every case.  Even if you're not asking us to strike it, the remedy, when the guy's already served the time, will always be to strike whatever one we have a problem with. And, Your Honor, this is not, you know, this is a fairly rare case. I don't think the court has confronted this ever. Nobody has brought this to the court's attention. And so we'd ask this court—this is not going to swallow the mootness rule here. I think that, you know, this court can decide this, as Your Honor noted, as a matter of law on the—based on the statutory scheme that New York has here. And for that reason, we'd ask the court to reach it. I'm going to move, unless the court has further questions about this, to the substance. Go ahead. Thank you. In this case, the government failed to demonstrate good cause for the admission of the hearsay statements. And the reason is that the record in this case has none of the facts in which this court has upheld allowing in a good cause finding. So can I ask, what do you believe would have been appropriate—would have been an appropriate basis for determining whether a witness's fear for safety is enough? What needs to be shown in that circumstance? Yeah, so I think there's certain facts that could be in this case that would have made this appropriate. So, for example, if the—if there had been some sort of evidence of that actual crime, the crime that the witness witnessed, in some way involving her, I mean, that's what a long series of cases, you know, or being pointed towards her, that is what a long series of these cases—of the cases of this court show. So even, you know, recently this court, you know, a month ago, two members of this court in United States v. Maldonado, two members of this panel, in that case, the, you know, the defendant there directed the actual, you know, crimes that took up the specification at the witness there. So, number one, if it involved the actual declarant, I think that would be enough. And it doesn't here, Your Honor. And indeed, even the case that the government relies on, United States v. Jones, itself involved actions of the defendant towards a declarant. And so I think that's not present in this case. But you wouldn't disagree that we're looking at abusive discretion here, right? That's absolutely right, Your Honor. So even if we agree with you, why does it—what are the—which bucket does it fall under allowing us to find abusive discretion here? Yes, well, I mean, we're not disputing the factual findings here, Your Honor, so we're not relying on that. I think that this falls into the misapplication or misapprehension of the law bucket. And I think that the court, you know, misapplied the law in relying upon the Peguero-Carthen line of cases that were materially different factually from this case here. In addition, I think that the court failed to appreciate, you know, and this is another error of law, Mr. Turner's interest in confronting the declarant here. The—what the court failed to appreciate was that this was not a standard case in which, you know, Mr. Turner was asserting, you know, I wasn't there, that wasn't me. It's actually that he was asserting misidentification, that the declarant sincerely but incorrectly, you know, pointed him out as the shooter in this case. In this instance, confrontation was critical, you know, that would—provided fertile ground. Mr. Turner could have asked, for example, about the fact that her description, contrary to logic, increased in specificity over a period of two weeks. He could have asked, you know, if he was—if she was sure that the person that she pointed out was the shooter. He could have asked about the circumstances of the video identification that the officer gave her, which was unreported by anybody, by the officer or by her. I mean, notably, this was not—these were unsworn statements, and she never—you know, none of this was written down. All of this could have provided fertile ground for cross-examination in this case, and this prejudiced the defense as well. Thank you. Thank you, Ms. Hutchinson. You have two minutes in rebuttal, and we'll hear from the government. Good morning, Your Honors. My name is William Kinder. I represent the United States in this appeal, and I represented the United States in the revocation proceedings below. I will address the jurisdictional issue first. This case is moot, as the government noted in its May letter. The—Turner has been released from prison. He's not on supervised release any further. I do think it's a better procedural practice to move from mootness rather than put it in a 28-J letter. Would you agree with that? So, Your Honor, the reason we submitted a 28-J letter here is because the briefing had been completed, oral argument had been scheduled. We wanted to quickly raise this issue. She just put it in the form of a motion because she didn't feel the need to respond to each of them in order, because it's a 28-J letter. But if it's agreement, then maybe you could put it in a letter if you call your adversary and everybody agrees it's moot. That's one thing, but that doesn't seem like that happened here. So I'm just saying in the future, I would urge you to consider that. Sure, Your Honor. And I'll just note one other piece about the procedural vehicle here is, of course, all federal courts are required to examine their own subject matter jurisdiction. And even if no party raises the issue, if there's no subject matter jurisdiction, the case needs to be dismissed. We will certainly take that into account going forward. Go ahead. So the proffered injury here is just not concrete enough to confer jurisdiction. I mean, I'm assuming that you're not going to take such a bright line rule that a revocation hearing prison sentence that has been served and there's no supervisory release can never be actionable. So what is an example of a continuing and concrete injury that you think is sufficient? Your Honor, I don't know that I've given sufficient thought to what the circumstances of a supervisee who has been released from his prison sentence. Well, let me give you a hypothetical. You tell me whether the government exposes a licensing regime to be a truck driver. And if you have a sentence of over 60 months, you can't get the license. And the difference in the revocation time would push you above the 60 months. That would be pretty concrete, wouldn't it? I think that would be concrete. It's different from what we have here, which essentially is a form of reputational harm in the context of a job application process. The question that's been presented here is what is an employer going to think of an applicant who has to disclose I'm a felon who served 71 months versus I'm a felon who served 64 months. That is simply a form of reputational harm. It's also speculative, as the thrust of Judge Bianco's questions earlier, to suggest that that additional seven months in the context of an overall sentence of over five years is going to make a difference with respect to employment. This is simply a repackaging, we think, of arguments that defendants have made in prior cases and that this court in Prober and the Supreme Court in Spencer have rejected. If the court does reach the merits, it should affirm the revocation judgment. Judge Carter was well within his discretion to conclude that the safety concerns associated with the witness testifying and the reliability of the statements outweighed Turner's interest in confronting the witness. So I'm going to do the same thing to you on this aspect that Judge Bianco just did on mootness, which is so coming to court is always scary. Testifying is always scary and certainly testifying as a witness to what is alleged to have been a violent crime, definitionally scary. And to me, I'm not seeing what's here besides that sort of mind-run fear. And if that mind-run fear is sufficient, then every allegation of violent behavior would justify the witness declining to appear and the judge saying there's no right to cross-examine them. So I respectfully disagree, Your Honor, and let me make a couple points in response to the question. The first is this witness had a credible fear that no one is disputing. She went so far as to say, if I were to testify, I feel the need to quit my job. So she felt scared. What I'm asking is what was it about the circumstances that she clearly felt that way, but what made her fear different than every other witness to a violent crime? So let me address that by sort of backing up. What we're talking about here is one prong of a three-pronged balancing test. What Judge Carter did was say, I'm going to give the government's reasons for not producing this witness significant weight. One of those factors was, I'm scared. That is something a witness could have in lots of cases. The other piece of that, though, is that this particular defendant has a very substantial history of violence. Turner argues that his criminal history is garden variety, but it is anything but. There was a 2014 assault conviction with intent to cause serious injury with a weapon. The felon in possession conviction, which is the underlying conviction in this appeal, was actually a gunpoint robbery where Turner put a gun to the head of a confidential informant who he had agreed to sell guns to but then decided to rob. And then before the district court was the evidence of the 2022 domestic violence assault against his then-girlfriend. And then, of course, the attempted murder. And so it was completely reasonable, in our view, for Judge Carter to look at that entire picture and say, I'm going to assign significant weight to this one of three prongs. He also assigned significant weight to the reliability of the statements. There were three statements. They were each internally consistent. They had significant detail. And they were corroborated by other evidence in the record. And he weighed those two factors and said, despite the fact that Turner has a strong interest in confronting this witness, I find that they outweigh that interest. And I'm not going to haul this particular witness into court who said, I feel the need to quit my job if I have to do this. There was nothing about the court's balancing of those three prongs that suggested it was irrational or arbitrary or amounts to an abuse of discretion. Unless there are further questions, I'll rest on my request. No, I want you to talk about prejudice. Harmless error. Would you at least concede that he was prejudiced by statements two and three or no? No, Your Honor. And the reason for that is because the first statement, the September 10 statement, was offered by Turner as a defense exhibit after an agreement by the parties before the hearing with respect to the party's exhibits. It was also admissible as an excited utterance or present sense impression. And so our view is that there are independent bases for the September 10 statement to have come in. And when you combine that statement, which was the shooter wore black pants, black jacket, and ran into the back of the building, with Turner's concession and post-hearing briefing, that he is the person on video wearing similar clothes and running into the back of the building. Doesn't that show prejudice? Doesn't the fact that statement two is the best I think you have of tying the identity of the shooter to Turner because it adds details about the description? Doesn't that establish prejudice? So it adds further detail. But our argument is that if that statement was erroneously admitted, it would not have made a difference because there was still the first statement, plus the video, plus Turner's admission that he was the one on the video. I'll just note that the court conducts, that Judge Carter conducts an analysis at Appendix 380. It's a slightly different context where he's talking about the September 10 and 22nd statements. But he says, I would have found the same even if the 27th statement is excluded. We think the same analysis would apply here. Thank you. All right. Thank you. Ms. Hutchinson, you have two minutes in rebuttal. Yes. I'm just going to go back very, very quickly, Judge Bianco, to this procedural vehicle here. I understand that this court can reach this and will probably reach this on the papers. But there is a reason for motion briefing or motion practice, which is affidavits. And we have the burden here to prove that. And I just want to note, my friend here is saying that we repackaged an old, tired claim. I contacted my client after this and received that anecdote that I had to drop in a footnote in the Rule 28J letter. And that could have been an affidavit. So I'd really ask the court to think very carefully before dismissing this case based on papers like this in terms of due process. This court could just decline to reach it based on the improper procedure. I'd prefer that the court did that. Judge Merriam, you were asking very specifically about what makes this case, I think, different or what is the nexus here. And I guess I would just point the court to the standard that we're applying. This one's United States v. Carthen. It is a history of violent conduct that makes reprisal against the declarant a possibility. So I think my friend is really hammering on the history of violent conduct here. But I think we have to look at the other nexus here that makes reprisal against the declarant a possibility. They don't know each other. The shooter paid no attention to her. We're not even sure where she works in this neighborhood. She doesn't even know if Mr. Turner's family is going to be at the hearing. She knows sort of nothing about this. This, to me, Judge Merriam, sounds a lot like what many people have fears of, and understandably about going up to court and being afraid, especially after witnessing something that is indeed frightening. But I think the nexus here makes reprisal against the declarant a possibility is missing. This court has not confronted facts like this, and I think that it would extend the precedent further than the court intends. Now, just very, very quickly, the waiver or forfeiture issue, we didn't address it. The parties agreed to this procedure beforehand. I find it very perplexing that the government is now saying that we somehow, like by pre-marking an exhibit and agreeing for it to come in, that somehow we waived this. In their post-briefing papers, they specifically, after Judge Carter said, you shall make your arguments parties in your papers, the government said, we are seeking to admit all three. I just don't understand why they're saying that the first statement is not preserved. And then as to prejudice, I'm sorry, as to an excited utterance issue very quickly, this body camera came in, body camera footage came in through an officer whose body camera was not, we have no idea when these statements were made on the body camera footage. We have no idea. There's no foundation for it. So, thank you, Your Honor. Thank you, Ms. Hutchinson. Thank you, Mr. Kinder. We'll reserve the decision. Have a good day. This is well argued. Thank you.